IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| FARADAY CAPITAL LIMITED, | : | |
| | : | |
| Plaintiff/Counter Defendant, | : | |
| | : | |
| v. | : | |
| | : | No. 5:10-CV-278 (CAR) |
| 325 GOODRICH AVENUE, LLC, | : | |
| | : | |
| Defendant/ Counter Claimant/ | : | |
| Third-Party Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BB&T INSURANCE SERVICES INC. | : | |
| d/b/a DEJARNETTE & PAUL, | : | |
| | : | |
| Third-Party Defendant/Counter | : | |
| Claimant, | : | |
| | : | |
| v. | : | |
| | : | |
| CRC INSURANCE SERVICES, INC., | : | |
| Third-Party Defendant. | : | |
| _____ | : | |

**ORDER ON PARTIES'
CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are the Cross-Motions for Summary Judgment submitted by

Plaintiff Faraday Capital Limited ("Faraday") and Defendant 325 Goodrich Avenue,

1

LLC ("Goodrich") [Docs. 131, 132]. In this action, Faraday seeks a declaratory judgment to determine its rights, duties, and obligations under a commercial property insurance policy (the "Policy") issued to Goodrich. Additionally, Faraday asserts claims for rescission and breach of warranty. Goodrich asserted a counterclaim against Faraday, alleging that Faraday breached the terms of the insurance policy by failing to pay for the claimed loss, and, that by doing so, it acted in bad faith. Having considered each party's Motion for Summary Judgment, all responses and replies thereto, and the applicable law, the Court concludes that the insurance policy does not provide coverage for Goodrich's claimed loss, and Faraday is entitled to judgment as a matter of law. Thus, for the reasons explained herein, Faraday's Motion for Summary Judgment [Doc. 131] is **GRANTED**,[1] and Goodrich's Motion for Summary Judgment [Doc. 132] is **DENIED**.

## BACKGROUND

The instant action concerns the Policy issued for Goodrich's property located at 325 Goodrich Avenue, Thomaston, Georgia (the "Property") and the extent of coverage, if at all, for an alleged sprinkler leakage (the "Incident") in two old warehouses ("Buildings A and B") on the Property.

---

[1] Faraday's Motion for Leave to File Excess Pages [Doc. 112] is **GRANTED**.

325 Goodrich Avenue, LLC, is a Georgia company formed by Virginia and Maryland based investors, Matthew Appelget, Greg Rochlin, and Justin French. The Property, known locally as Martha Mills, is a former B.F. Goodrich tire cord manufacturing facility consisting of eleven buildings, including, most relevantly, Buildings A and B. In June 2008, Goodrich purchased the Property for $1 million intending to renovate the buildings, or harvest, resell, and rehabilitate some of the antique hardwood floors.

Buildings A and B

Buildings A and B both had hardwood floors comprised of three different layers of wood: a maple top layer, a yellow pine middle layer, and a heart pine beams bottom layer. Before the Incident, the sprinkler systems had been partially removed, leaving, at the very least, an open standpipe in Buildings A and B.[2] The remaining facts regarding the condition of the floors and the buildings themselves prior to the Incident remain in dispute, including: the value and condition of the wood before and after the Incident; the amount of demolition in Building B and the overall condition of Building A; the extent of the sprinkler system removal; and whether the severance and

---

[2] Although the parties dispute whether the open standpipes were part of the sprinkler system, reading the facts in the light most favorable to the non-movant, which, with respect to this fact, is Goodrich, the Court will accept Goodrich's position on summary judgment that the standpipe was connected to the sprinkler system and that the only cause of loss was the sprinkler system.

3

removal occurred during Goodrich's ownership. For the purposes of this Court's Order, however, these issues are irrelevant.

The Policy

Immediately after purchasing the Property, Goodrich sought to procure insurance for the Property through various insurance brokers. On August 28, 2008, Goodrich retained insurance agency BB&T Insurance Services, Inc. ("BB&T"), located in Richmond, Virginia, as its broker. In early September, BB&T used CRC Insurance Services, Inc. ("CRC"), a wholesales lines insurance broker in Alabama, to assist in procuring insurance for Goodrich. CRC acts as Faraday's agent and has binding authority to commit Faraday to issue a policy.

On September 16, 2008, Goodrich, through BB&T, accepted the Policy committed to by CRC on behalf of Faraday. It is undisputed that this Policy was formed in Virginia. The insurance policy, adjusted to reflect the non-operational status of the sprinklers on the Property, was a Basic Coverage Form with Actual Cash Value, a $35,660 premium, and a $25,000 deductible. In pertinent part, the Policy provides:

**CAUSES OF LOSS—BASIC FORM**
**A. Covered Causes of Loss**

>    When Basic is shown in the Declarations, Covered Causes of Loss means the following:
> 
> …
> 
>    9. Sprinkler Leakage ….
> 
> **B. Exclusions**
> 
> …
> 
>    2. We will not pay for loss or damage caused by or resulting from:
>    c.   Leakage or discharge of water or steam from any part of a system of appliance containing water or steam (other than an Automatic Sprinkler System).
> 
> …
> 
> 
> 
> **BUILDING AND PERSONAL
> PROPERTY COVERAGE FORM**
> 
> 
> 
> …
> 
> **E. Loss Conditions**
> 
>    The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.
> 
> …
> 
>    6. Vacancy
> 
>    …
> 
>    (b)   Vacancy Provisions: If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:
>       (1) We will not pay for the loss or damage caused by any of the following even if they are Covered Causes of Loss:
> 
>          …
> 
>             (b) Sprinkler leakage ….

[Policy p. 10 10 04 02, Doc. 131-13, p. 30, 32, 22]. The Policy also contains a Vacancy Permit Endorsement ("Vacancy Permit" or "Permit") that modified the insurance accordingly:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
**SCHEDULE**

| Prem.<br>No. | Bldg.<br>No. | Excepted Causes of Loss | | Permit Period | |
|---|---|---|---|---|---|
| | | **Vandalism** | **Sprinkler Leakage** | From | To |
| ALL | ALL | EXCLUDED | EXCLUDED | 9/16/08 | 9/16/09 |

…

 A. The VACANCY Loss Condition does not apply to direct physical loss or damage:
  1. At the locations; and
  2. During the Permit Period;
  shown in the Schedule or in the Declarations.
 B. This Vacancy Permit does not apply to the Excepted Causes of Loss indicated in the Declarations or by an "X" in the Schedule.

[Id. at p. 04 50 07 88, Doc. 131-13, p. 29].

The Incident

On October 8, 2008, water flowed[3] through the open standpipe in the first floors of Buildings A and B, covering the antique wood floors with two to three inches of water. Following the Incident, Goodrich submitted a formal insurance claim with Faraday, citing a "flood" as grounds for the alleged loss. Because the Policy did not provide coverage for flooding, leakage, or discharge of water, Faraday denied this claim on November 17. The next day Goodrich resubmitted its claim and clarified that

---

[3] The cause of the Incident is currently in dispute in the companion case, 325 Goodrich, LLC v. Southwest Water Company, 5:10-CV-452 (CAR).

the cause of loss was for "sprinkler leakage," and Faraday reopened the investigation. The main issue before the Court on summary judgment is whether "sprinkler leakage" is a covered cause of loss under the Policy.

Procedural History

Faraday filed its Complaint for declaratory relief, rescission, and breach of warranty claims against Goodrich on July 27, 2010. Goodrich filed a timely answer and asserted counterclaims for breach of contract and bad faith. In addition, Goodrich filed a Third-Party Complaint against BB&T and CRC for 1) fraud; 2) breach of contract under Virginia law, or, in the alternative, failure to procure insurance pursuant to Georgia law; 3) punitive damages; and 4) attorney's fees. With the Court's permission, Faraday subsequently filed an Amended Complaint maintaining the original claims against Goodrich, but alleging an additional claim against BB&T for indemnity and/or contribution in the event that Faraday is liable to Goodrich for its loss.

As of the date of this Order, there are eleven substantive pending motions in this action: five motions for summary judgment, including the instant two motions; five motions to exclude expert testimony; and one motion to file a sur-reply to a motion to exclude. This Order focuses on Faraday's and Goodrich's Cross-Motions for

Summary Judgment, but will necessarily preclude some of the remaining motions from being decided on the merits. The Court will discuss the dispositive effect of this Order below.

## LEGAL STANDARD

Summary judgment must be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Lib. Lobby, Inc., 477 U.S. 242, 247-48 (1986). This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52.

In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence. See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133

8

(2000). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323.

If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex, 477 U.S. at 323.

## DISCUSSION

Faraday seeks a declaratory judgment concerning the scope of the Policy's coverage for "sprinkler leakage." In addition to responding to the merits of Faraday's

9

Motion and asserting the merits of its counterclaims in its own Motion, Goodrich contends that Faraday's declaratory judgment action is not justiciable. Before the Court considers the scope of coverage under the Policy, the Court will begin with Goodrich's threshold argument.

I. **Justiciability of Faraday's Claims**

Goodrich challenges the justiciability of Faraday's actions by arguing that its breach of contract counterclaim disposes of Faraday's entire case, including its request for declaratory relief. Goodrich asserts that in order for the Court to rule on its breach of contract counterclaim, the Court must necessarily consider the parties' rights and obligations under the contract, thus making Faraday's declaratory judgment action moot.

In diversity cases seeking declaratory relief, as is the case here, the federal court applies state law on substantive issues, but federal law controls the issue of whether the court may properly render a declaratory judgment. See, e.g., Cincinnati Ins. Co. v. Holbrook, 867 F.2d 1330, 1332–33 (11th Cir. 1989), abrogated on other grounds, Wilton

v. Seven Falls Co., 515 U.S. 277, 115 S. Ct. 2137 (1995).  Accordingly, the Court will apply federal law to determine if Faraday's declaratory judgment action is justiciable.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  Here, as set forth in the Complaint, the Court agrees with Faraday that the instant case involves an actual controversy—Faraday brought this action in order to determine the extent of the Policy's coverage of Goodrich's claimed loss.  The fact that Goodrich now asserts a claim for damages under the Policy reinforces the presence of an "actual controversy."  See id.

Goodrich, however, relies upon Newton v. State Farm Fire & Casualty Co., 138 F.R.D. 76 (E.D. Va. 1991), where a court found that a declaratory judgment was improper in a breach of contract action.  However, Newton is distinguishable from the instant case.  In Newton, the district court determined that a declaratory judgment would not "clarify the legal rights or obligations in question" because the plaintiff was asking for a clarification of "purely factual questions."  Id. at 78-79.

11

This case presents an entirely different issue.  Faraday has requested that this Court determine the extent of its legal rights or obligations to Goodrich under the Policy.  Goodrich's breach of contract counterclaim does not render Faraday's declaratory judgment action improper, and Goodrich has not provided this Court with any authority to suggest otherwise.

Goodrich also vaguely argues that Faraday's declaratory judgment action is "piecemeal litigation."  However, this argument, in the context of declaratory relief, appears to be a factor in considering whether to exercise federal jurisdiction over a declaratory judgment action when a parallel state action is pending.  See <u>Ameritas Variable Life Ins. Co. v. Roach</u>, 411 F.3d 1328, 1330-31 (11th Cir. 2005).  Here, however, there is no parallel state court action.  Indeed, the only issue that could remotely be pending—Goodrich's counterclaims—have already been alleged by Goodrich in this Court.  Notwithstanding, Goodrich has failed to provide any persuasive argument that would lead the Court to conclude that Faraday's pending action is "piecemeal litigation."  Accordingly, the Court concludes that Faraday's declaratory judgment action is justiciable.

## II. The Policy

The Court next considers whether "sprinkler leakage" is a covered cause of loss under the Policy and whether an exclusion in the Policy applies.

### A. Choice of Law

This action is based on diversity of citizenship, and thus, the Court is required to apply the choice of law rules of the forum state—Georgia. See Klazon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941). Under Georgia law, the insurance policy is governed by the law of the state where the contract was made unless the application of the foreign law would be contrary to Georgia public policy. Gen. Tel. Co. of the Se. v. Trimm, 252 Ga. 95, 96 (1984); O.C.G.A. § 1-3-9. Because the Policy was issued in Virginia, and there is no indication or argument that the application of Virginia law would be contrary to Georgia public policy, Virginia law governs the interpretation of the Policy at issue here.

Under Virginia law, courts interpret insurance policies, like other contracts, in accordance with the parties' intention as expressed by the choice of terms in the document. Floyd v. N. Neck Ins. Co., 245 Va. 153, 158, 427 S.E.2d 193, 196 (1993). To

give effect to the parties' intention, the court should construe the contract as a whole so as to reasonably harmonize any seemingly conflicting provisions. Transcon. Ins. Co. v. RBMW Inc., 262 Va. 502, 512, 551 S.E.2d 313, 318 (2001) (citation omitted). Where the language of the policy is plain, the Court should apply the plain meaning of the policy. Va. Farm Bureau Mut. Ins. Co. v. Williams, 278 Va. 75, 81, 677 S.E.2d 299, 302 (2009). However, where there are two equally possible interpretations of an insurance contract creating an ambiguity, the interpretation most favorable to the insured is adopted. Id.

The policyholder bears the burden of proving coverage. Md. Cas. Co. v. Cole, 156 Va. 707, 716, 158 S.E. 873, 876 (1931). Once the policyholder carries its burden, the burden then shifts to the insurance company to prove that an exclusion within the policy applies. RBMW, 262 Va. at 512, 551 S.E.2d at 318. However, these exclusions are read narrowly in favor of coverage, id., as "it is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous." Am. Reliance Ins. Co. v. Mitchell, 238 Va. 543, 547, 385 S.E.2d 583, 585 (1989) (internal citations omitted).

B. Coverage

14

As the policyholder, Goodrich bears the burden of proving that the Policy provides coverage for sprinkler leakage. This issue, however, appears largely undisputed. The Policy unambiguously states that "Sprinkler Leakage" is a "Covered Cause[ ] of Loss." [Policy p. 10 10 04 02, Doc. 131-13, p. 30]. Thus, under the plain meaning of the Policy, sprinkler leakage is a covered cause of loss. Although the parties dispute whether the water came from the "sprinkler system" itself in Buildings A and B, this issue is irrelevant because, even if Goodrich can prove the sprinkler system leaked and caused the water damage as it now argues, Faraday nevertheless has shown that "sprinkler leakage" is unambiguously excluded under the Policy's Vacancy Permit.

C. <u>Vacancy Permit Endorsement Exclusion</u>

Faraday argues that the Vacancy Permit excludes sprinkler leakage from coverage in all buildings, regardless of vacancy. Goodrich responds that the Permit excludes sprinkler leakage only from buildings that are vacant, and Buildings A and B were not vacant at the time of the water damage. For the following reasons, the Court

15

finds that the Vacancy Permit unambiguously applies to all buildings on the premises, regardless of their vacancy.

The Permit, in pertinent part, modifies the Policy accordingly:

### SCHEDULE

| Prem. No. | Bldg. No. | Excepted Causes of Loss | | Permit Period | |
|---|---|---|---|---|---|
| | | Vandalism | Sprinkler Leakage | From | To |
| ALL | ALL | EXCLUDED | EXCLUDED | 9/16/08 | 9/16/09 |

[Id. at p. 04 50 07 88, Doc. 131-13].

Based on the Policy's plain meaning and reading the exclusionary language narrowly, it is clear that sprinkler leakage coverage is excluded in the Permit for all buildings and all premises on the Property on October 8, 2008. Moreover, the Permit voids the Vacancy Loss Condition that excluded sprinkler leakage to only vacant buildings: "The Vacancy Loss Condition does not apply to direct physical loss or damage: (1) At the locations; and (2) During the Permit Period; shown in the Schedule or in the Declarations." Id. In other words, by voiding the Vacancy Loss Condition, the Permit does not mandate that a building be vacant in order to exclude sprinkler leakage from coverage. Thus, the sprinkler leakage exclusion applies to all buildings regardless of vacancy.

16

Goodrich contends that this interpretation is contrary to a vacancy permit's general purpose of allowing an insured to have coverage of vacant buildings. While the Court does acknowledge the general purpose of such a permit, the Court cannot ignore the plain meaning of *this* Policy. See Debartolo v. Underwriters at Lloyd's of London, 181 Vt. 609, 613, 925 A.2d 1018, 1024 (2007). To do so would be in direct contradiction of Virginia law and ignore the parties' intentions as expressed by the plain meaning of the terms in the Policy. See Va. Farm Bureau, 278 Va. at 81, 677 S.E.2d at 302 (holding that where policy language is plain, Court should apply plain meaning). Accordingly, the Court concludes that Faraday has shown that the terms of the Policy unambiguously exclude sprinkler leakage as a covered cause of loss to all buildings on the Property.

Therefore, adopting Goodrich's position on summary judgment that sprinkler leakage caused the flooding in Buildings A and B, the Court concludes that Goodrich's claim for the alleged loss in Buildings A and B is excluded as a covered cause of loss under the Policy. In light of this finding, the parties' remaining arguments, claims, and counterclaims are moot. Faraday's Motion for Summary Judgment [Doc. 131] is

17

therefore **GRANTED**, and Goodrich's Motion for Summary Judgment [Doc. 132] is **DENIED**.

## CONCLUSION

Based on the aforementioned, Faraday's Motion for Leave to File Excess Pages [Doc. 112] and Faraday's Motion for Summary Judgment [Doc. 131] are **GRANTED**. Goodrich's Motion for Summary Judgment [Doc. 132] is **DENIED**.

In light of this conclusion, BB&T's Motion for Summary Judgment [Doc. 127] disputing Faraday's third-party claims for indemnity and contribution is **DENIED as moot**. Additionally, Goodrich's Motion to Exclude the Expert Testimony of Carl Michael Gates [Doc. 110], Faraday's Motions to Exclude the Expert Testimony of Rubin Shmulsky [Doc. 114] and Dale Wheeler [Doc. 115], and Faraday's Motion to File a Sur-Reply to Goodrich's Motion to Exclude [Doc. 122] are **DENIED as moot.**

**SO ORDERED,** this 20th day of July, 2012.

<u>S/ C. Ashley Royal</u>
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

LMH/aes/ssh